**UNITED STATES of America,
Appellant,**

v.

**UZZOLINO, Joseph P., Appellee.**

No. 80–2287.

United States Court of Appeals,
Third Circuit.

Argued Feb. 24, 1981.

Decided June 15, 1981.

James A. Plaisted (argued), William W. Robertson, Maryanne Trump Desmond, Asst. U. S. Attys., Newark, N. J., for appellant.

S. M. Chris Franzblau (argued), Franzblau & Falkin, Newark, N. J., for appellee.

Before ADAMS, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

In June, 1980, appellee, Joseph P. Uzzolino, was charged under 18 U.S.C. § 371 (1976) with conspiracy to receive kickbacks in violation of 18 U.S.C. § 1954 (1976), and conspiracy to embezzle pension fund assets in violation of 18 U.S.C. § 664 (1976). In addition to the conspiracy count, the defendant was also charged with eleven counts of specific violations of sections 664 and 1954. A jury found Uzzolino guilty of conspiracy, but acquitted him on the substantive crimes of embezzlement and receiving kickbacks. The trial court, believing the verdicts to be inconsistent, granted appellee's Fed.R.Crim.P. 29(c) motion and set aside the jury's verdict on the conspiracy count. On July 24, 1980, the district court entered a judgment of acquittal for the appellee.

The Government appeals from that judgment. It argues that even under the wording of the indictments in this case, conspiracy is a separate offense from the substantive acts in furtherance of that conspiracy. The Government therefore asserts that it was within the province of the jury to find

the defendant guilty of one and not the other. We agree. Therefore, we will reverse the district court's judgment and order appellee's conspiracy conviction to be reinstated.

## FACTS

### Background

Appellee was charged with conspiring to embezzle Pension and Welfare Fund assets; conspiring to receive kickbacks as trustee of the fund; accepting kickbacks; and embezzling Pension Fund assets. The alleged offenses occurred during Uzzolino's tenure as President and Business Agent of Local 478, an employee organization entrusted with the management of an Employee Pension Benefit Plan. In November, 1975, appellee met at a roadside diner with Sam Mor, the owner of Towers Transportation, Inc. ("Towers"), a company owing approximately $80,000 to the Pension and Welfare Fund. At that meeting, Mor offered to pay appellee $10,000, in $2,500 installments, if appellee would use his influence as President and Business Agent of the Fund to help Mor escape payment of the $80,000 debt. He also offered to pay appellee $1,000 a month if he would turn his back on Mor's use of non-union owner-operators.'

The next day appellee agreed to Mor's proposal. After receiving the cash, appellee instructed Albert S. Parsonnett, attorney for the Fund, not to seek collection of the Towers' debt. Shortly thereafter, the Fund's billing statement to Towers ceased to reflect Towers substantial delinquency to the Fund. The Fund also decided not to strike Towers, as it had done before, in an attempt to force payment of the delinquent Welfare Fund contribution. Towers never paid its delinquent contributions and it failed to keep up its current contributions to the Fund. Consequently, the Company's insurance lapsed and some of the workers were forced to pay their own hospital bills. Still, the Fund did not press Towers for payment.

Finally, in May 1976, Mor and appellee discussed a plan to change the corporate shell of Towers. Mor changed the name of the trucking firm to Far East Truck Leasing ("Far East"). Far East, the same company as Towers except for the changed name, was never asked to pay the Towers obligations, including the judgment on a suit which had been initiated prior to appellee's agreement with Mor. Far East eventually defaulted on its contributions to the Fund causing the employees' insurance to be cancelled for non-payment. .

### The Indictment

The Government brought an eleven count indictment against appellee. Count 1, described by the trial judge as a conspiracy indictment, charged in part:

> From in and around November 1975 until approximately in and around the end of 1976 at Elizabeth in the District of New Jersey and elsewhere, the defendants
>
> JOSEPH P. UZZOLINO,
> JOSEPH A. UZZOLINO and
> JOSEPH AMENDOLA
>
> *did knowingly and wilfully combine, conspire, confederate and agree with each other and with others to commit offenses against the United States*, that is to receive fees, kickbacks, commissions, gifts, loans, money and things of value because of and with the intent to be influenced with respect to actions, decisions and other duties relating to questions and matters concerning the Welfare Fund and the Pension Fund in violation of Title 18, United States Code, Section 1954.

Redacted Indictment at 2, *reprinted in* Appendix at 26 (emphasis added). The conspiracy charge was broken down into two parts. Paragraphs 12 and 13 of Count 1 of the indictment discussed the payments to hinder collection of the $80,000 debt; paragraphs 14 and 15 outlined the conspiracy to permit use of non-union owner-operators in return for a monthly $1,000 payment. Finally, the last section of Count 1 described the alleged overt acts committed by appellee and his co-conspirator in furtherance of the conspiracy.

Counts 2 through 9 of the indictment then charged specific violations of section

1954 by the appellee.[1] In drafting these counts, the Government tracked substantially the language of section 1954 which states, in relevant part, "Whoever . . . receives or agrees to receive . . . any . . . kickback . . . shall be fined not more than $10,000 or imprisoned not more than three years, or both . . ." 18 U.S.C. § 1954 (1976).[2] For example, in Count 2 of the indictment, the Government alleged:

1. Paragraphs 1 through 10 of Count 1 are hereby realleged and incorporated as though set forth in full herein.

2. In and around December 1975 at Elizabeth in the District of New Jersey and elsewhere the defendants

JOSEPH P. UZZOLINO

JOSEPH A. UZZOLINO

did knowingly, wilfully and unlawfully *receive and agree to receive* kickbacks, money and things of value from Sam Mor and his business associates, that is, approximately $2,500.00 in cash because of and with intent to be influenced with respect to their actions, decisions and duties relating to questions and matters concerning the Pension Fund and the Welfare Fund namely, the collection of the contributions and debt due to those Funds from Towers Transportation, Inc.

In violation of Title 18, United States Code, Section 1954 and 2.

Redacted Indictment at 5, *reprinted in* Appendix at 29 (emphasis added). Counts 2 through 9 of the indictment, referred to by the district court as the "substantive counts" of the indictment,[3] were drafted to detail the specific payments received by Uzzolino for the exercise of his influence.

The jury returned a verdict of guilty against appellee on Count 1 only. Following the jury's verdict, the district court directed special interrogatories to the jury. It asked them to verify whether the Government had proved the averments of paragraphs 12 through 15 of the indictment, which state:

12. It was a further part of said conspiracy that the defendants and co-conspirators agreed to use their influence to delay, obstruct and hinder the collection of in excess of $80,000 in debts already accrued and due from Towers Transportation, Inc. to the Pension Fund and the Welfare Fund in return for cash to be paid to the defendants and co-conspirators.

13. It was a further part of said conspiracy that $10,000 was delivered to the

---

**1.** Only counts 2 through 9 become important for this appeal since only those counts possibly overlap with the conspiracy charge of count 1. Counts 10 and 11 addressed the crime of embezzlement under 18 U.S.C. § 664 (1976). That statute states, in relevant part,

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined not more than $10,-000, or imprisoned not more than five years, or both.

Since section 664, and the counts of the indictment drafted pursuant to it, make no mention of unlawful agreements, appellee does not argue that the jury's acquittal on counts 10 and 11 conflict with its guilty verdict on Count 1 conspiracy.

**2.** We recognize, of course, that there is a difference between the language of section 1954 and that used in counts 2 through 9 of this case. By its terms, the statute requires that the Government prove that the defendant agreed to

receive *or* received *or* solicited the unlawful payments. The indictment, however, states that the defendant "agreed to receive *and* received" the unlawful payments.

The substitution of the term "and" for "or" did not change the Government's burden in this case. As noted in the trial court's instructions, *Appendix* at 2123, even with the substitution, the Government was required to prove no more than what the statute demands; that is, that Uzzolino agreed to receive or received the kickbacks. *See United States v. Blair*, 456 F.2d 514, 518–19 (3d Cir. 1972). *Cf. Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 654, 24 L.Ed.2d 610 (1970). The error in the indictments becomes important in this case because it may have suggested to the jury that the Government, in order to prove counts 2 through 9, was required to prove not only that Uzzolino agreed to receive the payments, but that he actually received them. *See* text accompanying notes 12 & 13 *infra*.

**3.** Transcript of Proceedings, *reprinted in* Appendix at 2094–95.

defendants and co-conspirators in return for their aid in delaying and obstructing and hindering the action of collection of the outstanding debt of in excess of $80,-000 to the Pension Fund and the Welfare Fund due for the period prior to November 7, 1975.

14. It was a further part of said conspiracy that co-conspirators would permit Towers Transportation, Inc. and Far East Truck Leasing, Inc. to employ a large number of owner-operators of trucks who were not members of Local 478 and for whom contributions to the Pension Fund and the Welfare Fund were not required, without interference in return for cash and other items of value to be paid to the defendants and co-conspirators.

15. It was a further part of said conspiracy that from approximately February through September 1976, the defendants and co-conspirators were paid at least $1,000 per month.

The jury answered that it has "found unanimously that the United States had proved paragraph 12 beyond a reasonable doubt, but never has reached an agreement concerning paragraph 13." Transcript of Proceedings, *reprinted in* Appendix at 2241. It answered "no", however, to the trial court's question of whether the United States proved the averments of paragraphs 14 and 15.

In a post-verdict motion under F.R. Crim.P. 29(c),[4] appellee argued that the jury's verdict on Count 1 of the indictment must be vacated because the government had not proven the crucial element of the conspiracy charge—an agreement between appellee and his alleged co-conspirators to receive kickbacks. Appellee contended that the jury's acquittal on Counts 2 through 9 demonstrated that he had not "agreed to receive" the payments and therefore precluded a finding under Count 1 that appellee was involved in an unlawful agreement or conspiracy.[5] The government took the position that it now takes on appeal; it argued that the jury's verdict and responses to the special interrogatories indicated only that the jury could not agree as to whether the transfers of money had actually taken place or had taken place with the requisite specific intent for the crimes, not whether the defendant and co-conspirators agreed to an illegal arrangement. The district court granted appellee's motion; it entered a judgment of acquittal for appellee on Count 1. The Government appeals.

### DISCUSSION

*Jurisdiction*

Before we decide the merits of the Government's appeal, we must first determine whether we have jurisdiction to hear this case. This court's power to hear appeals from the Government in criminal cases is set forth in 18 U.S.C. § 3731 (1976):

> In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order

4. F.R.Crim.P. 29(c) provides in relevant part:
   If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for acquittal may be made or reviewed within 7 days after the jury is discharged .... If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal.

5. On July 9, 1980, at a hearing before the Honorable Frederick B. Lacey, United States District Judge for the District of New Jersey, appellee's counsel presented his argument:
   The thrust of our position is not inconsistent verdicts but that Count 1 and Counts 2 through 9 inclusive really express the same thing because of the language of the statute. There is, the question is the word "conspir-acy" I suggest is synonymous with the word "agreement" as your Honor has charged, and in view of the fact that the entire theory of the government's case was basically on kickbacks and payoffs, there's no other evidence in this case beyond, you know, the acts which the jury considered in the substantive counts.
   
   \* \* \* \* \* \*
   
   We suggest that because of the fact that there was an acquittal on an agreement to receive kickbacks that, in effect, is the exact same substantive offense even though it is defined as a conspiracy by virtue of an agreement to receive, and the conspiracy to receive in Count 1.
   
   Transcript of Proceedings at 4, *reprinted in* Appendix at 48-49.

of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Section 3731 has been interpreted to apply to post-verdict acquittals under Federal Rule of Criminal Procedure 29(c), as well as to dismissals of indictments or informations. *United States v. Schoenhut*, 576 F.2d 1010 (3d Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 450, 58 L.Ed.2d 421 (1978). *See also United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). As long as double jeopardy does not bar the government's appeal, this court is free to review the district court's post-verdict acquittal.[6] *United States v. Scott*, 437 U.S. 82, 85, 98 S.Ct. 2187, 2190, 57 L.Ed.2d 65 (1977); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1976); *Schoenhut*, 576 F.2d at 1018 n.7.

■ We hold that double jeopardy does not bar this appeal. In *Schoenhut*, this court held:

> [D]ouble jeopardy is not implicated in an appeal from a judgment of acquittal entered after a jury verdict of guilty because there is no possibility that the defendant will have to stand trial again for the same offense .... If the

Government prevails in this appeal, the jury's guilty verdict will be reinstated. *Id. See also Martin Linen Supply*, 430 U.S. at 569–70, 97 S.Ct. at 1353; *Wilson*, 420 U.S. at 342, 95 S.Ct. at 1018; *United States v. Jenkins*, 420 U.S. 358, 367–368, 95 S.Ct. 1006, 1011–1012, 43 L.Ed.2d 250 (1975); *United States v. Cahalane*, 560 F.2d 601, 603 n.2 (3d Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978); *United States v. Davis*, 560 F.2d 144, 146–47 (3d Cir.), *cert. denied*, 434 U.S. 839, 98 S.Ct. 133, 54 L.Ed.2d 102 (1977). As in *Schoenhut*, no new trial will be required in the instant case if the Government prevails upon appeal. *See also United States v. Brandon*, 633 F.2d 773, 778–79 (9th Cir. 1980). Rather, the jury's guilty verdict on Count 1 will be reinstated. Accordingly, the Government's appeal is in harmony with the double jeopardy clause and there is jurisdiction under section 3731 for this appeal.

### Consistent Verdicts

The trial judge granted appellee's Rule 29(c) motion because he believed that the jury, by acquitting Uzzolino on Counts 2 through 9, may have determined that the appellee never entered into an unlawful agreement to receive kickbacks.[7] Counts 2

---

**6.** We believe that the Supreme Court intended this rule to apply even when the post-verdict acquittal is granted because the trial court believes that the jury was not convinced beyond a reasonable doubt of the defendant's guilt. *See* text accompanying note 7 *infra*. It has been argued that post-verdict acquittals based upon the merits of the Government's case differ from acquittals based upon trial error; that permitting an appeal from such judgments gives the Government a second chance to prove its case and thus violates the double jeopardy clause. We reject this argument. The crucial test for determining whether double jeopardy bars a section 3731 appeal is whether a reversal will lead to successive prosecutions. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *Martin Linen Supply*, 430 U.S. 564, 569–70, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1976); *Schoenhut*, 576 F.2d at 1018 n.7. Although the Supreme Court has recently distinguished between reversals based upon trial error and those based upon insufficient evidence, *see Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981);

*Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978); *Scott*, 437 U.S. at 92–101, 98 S.Ct. at 2194–2199 (dismissal of indictment), it has not repudiated its longstanding principle that double jeopardy presents no bar when there is a verdict that can be reinstated. *Martin Linen Supply*, 430 U.S. at 569–70, 97 S.Ct. at 1353. The rule emerging from these recent cases is not that double jeopardy comes into play automatically upon a court's acquittal, but rather that a court cannot remand a case for a new trial when it finds that the Government has not proved its case against the defendant. It must acquit the defendant and set him free. This rule does not bar appellate review which could, at most, lead to reinstatement of the jury's verdict and not a new trial.

**7.** The district court admitted that it was at best unclear as to how the jury had considered the overlap in the indictments. In ruling on the Rule 29(c) motion, the court stated:

> Obviously it is impossible for me to determine what cognizance, if any, the jury took

through 9 of the indictment included the words "received and agreed to receive." The court viewed the conspiracy in Count 1 as a mere collection of the individual agreements alleged in Counts 2 through 9.[8] Thus, the jury's finding that appellee never made the individual agreements alleged in Counts 2 through 9 could not be reconciled with its finding on Count 1 that there had been a conspiracy or agreement to receive illegal payments.

After reviewing the indictments in the instant case, we come to a different conclusion. First, we note, as did the trial court,[9] that even if a jury's verdicts are inconsistent, inconsistency alone is not an appropriate legal basis to reverse an otherwise valid jury verdict. *See Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1973); *United States v. Continental Group, Inc.*, 603 F.2d 444, 455 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). The general rule is that inconsistent verdicts will be left to stand as a hallmark to the jury's "assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1931) *quoting Steckler v. United States*, 7 F.2d 59, 60 (2d Cir. 1925).[10] Only in a rare case will such verdicts demonstrate that there was no legal basis for the jury's decisions. *See, e. g.,*

*United States v. Hannah*, 584 F.2d 27 (3d Cir. 1978).[11] Certainly, where, as in this case, there is some question as to whether the verdicts are inconsistent, the jury's verdicts will not be disturbed. *See United States v. Varkonyi*, 611 F.2d 84, 86 (5th Cir.), *cert. denied*, 446 U.S. 945, 100 S.Ct. 2173, 64 L.Ed.2d 801 (1980).

Second, and perhaps more importantly for the instant case, we disagree with the trial judge that there is an inconsistency which demonstrates that the jury did not believe that there was sufficient evidence to support the conspiracy charge. If one looks to the indictments submitted to the jury in this case, it appears that the jury may have believed that it was required to find the existence of two elements: (1) an agreement to receive those kickbacks; and (2) the receipt of unlawful kickbacks in order to hold appellee guilty on counts 2 through 9.[12] An acquittal on counts 2 through 9 may well have represented the jury's belief that there was insufficient evidence to prove at least one of the elements. The trial judge assumed that the jury found that the first element was missing; that is, that the government had not proved beyond a reasonable doubt that appellee had agreed to receive the kickback payments. It therefore viewed the jury's acquittal on counts 2 through 9 as undermining its finding on Count 1 that there was an unlawful arrangement.

---

of the words "and agree" in Counts 2 through 9. The fact is, however, that the jury may well have been considering those words when it ultimately determined that it would acquit the defendant on those counts. Transcript at 8–9, *reprinted in* Appendix at 80–81.

8.  The court stated:
    If one takes all the "agreements" that the government alleges are discrete and separate agreements with respect to each substantive transaction from Counts 2 through 9, and gathers them together, one is at a loss to see anything but congruence between the sum thereof and what is charged in Count 1. Transcript of Proceedings at 7, *reprinted in* Appendix at 79.

9.  *See* Transcript of Proceedings at 5, *reprinted in* Appendix at 77.

10.  *See Brandon*, 633 F.2d at 779; *United States v. Beck*, 615 F.2d 441, 448 (7th Cir. 1980); *United States v. Niemiec*, 611 F.2d 1207, 1210 (7th Cir. 1980). *See generally* Perkins, *Dealing With the Inconsistent Verdict*, 15 Crim.L.Bulletin 405 (1979).

11.  In *Hannah*, the jury's verdict was reversed because under the Government's conceded trial theory, the conspiracy for which the defendant had been acquitted was a predicate offense to the substantive offense of using the mails to facilitate that same conspiracy. The court stated that since the same jury had acquitted the defendant of the very crime he was charged with facilitating, the charge of facilitating "was insufficient as a matter of law." 584 F.2d at 30. The court therefore refused to apply the doctrine of inconsistent verdicts.

12.  *See* note 2 *supra*.

There is, however, a second plausible interpretation of the jury's acquittal on counts 2 through 9. The jury may have acquitted appellee on the substantive counts because it found that the government failed to prove that appellee actually received the alleged illegal payments. Indeed, the jury's answers to the special interrogatories seem to suggest that it did just that. The jury found unanimously that the United States proved that there was a conspiracy. It never reached an agreement, however, on whether "$10,000 was delivered to the defendants ...." *See* text accompanying note 4 *supra*.

We believe that the jury's acquittal on the substantive counts is logically consistent with its conviction on Count 1. While appellee entered into an agreement to receive illegal kickbacks, the government was never able to prove that the payments were made. Based on the wording of the indictments and the facts of this case, we find no grounds for holding that the jury believed that there was insufficient evidence to support the conspiracy conviction.[13]

## CONCLUSION

Accordingly, we will reverse the lower court's judgment and order appellee's conviction on Count 1 to be reinstated. We remand this case to the lower court for further proceedings in accordance with this judgment.

---

13. The appellee also contends that the conspiracy conviction cannot stand because the verdict on Count 1 was deficient in its own right. Paragraph 13 of Count 1 stated:

It was a further part of said conspiracy that $10,000 was delivered to the defendants and co-conspirators in return for their aid in delaying and obstructing and hindering the action of collection of the outstanding debt of in excess of $80,000 to the Pension Fund and the Welfare Fund due for the period prior to November 7, 1975.

The appellee argues that since the jury apparently never found beyond a reasonable doubt that the $10,000 had been delivered, there was no showing that he committed the conspiracy charged in Count 1.

We disagree. Although the description of the conspiracy in this case included a reference to the substantive violations alleged to have resulted from the unlawful agreement, that reference did not, as a matter of law, constitute an essential element of the conspiracy charge. In order to prove a conspiracy under § 371, the Government was only required to prove: (1) the combination of two persons, (2) a real agreement, (3) an unlawful purpose, and (4) an overt act by one of the conspirators. *United States v. Small*, 472 F.2d 818 (3d Cir. 1972). There were several overt acts listed in Count 1 of the indictment which may have supported the jury's verdict. To the extent that paragraph 13 was intended to add to that list, the jury's failure to find that appellee had committed the substantive act of receiving the kickbacks did not invalidate the conspiracy conviction. It is the clear law of this circuit that "the Government is under no obligation to prove every act alleged." *United States v. Adamo*, 534 F.2d 31, 38 (3d Cir. 1976). Accordingly, the jury could properly have found appellee guilty of conspiracy without finding that he had committed substantive violations in furtherance of that conspiracy. *Cf. Callanan v. United States*, 364 U.S. 587, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961).