**UNITED STATES of America**

v.

**Joseph PICCIOTTI.**

**No. CRIM. 97–432.**

United States District Court, D. New Jersey.

March 16, 1999.

Bruce A. Levy, Robert M. Hanna, Assistant United States Attorneys, Newark, NJ, for U.S.

Carl D. Poplar, Teri S. Lodge, Poplar & Eastlack, Turnersville, NJ, for Joseph Picciotti.

## OPINION

ORLOFSKY, District Judge:

On March 11, 1999, following the conclusion of the Government's case, Defendant, Joseph Picciotti ("Dr. Picciotti"), moved for a judgment of acquittal, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. At the conclusion of oral argument, I reserved decision on the motion, pursuant to Rule 29(b).[1]

In pressing this motion, Dr. Picciotti's counsel divided the Indictment into four categories of allegations: (1) mail fraud, see Indictment, Counts 8–14; (2) kickbacks with reference to Leon SCD, see id., Counts 2–4; (3) kickbacks with reference to BK Associates ("BKA"), see id., Counts 5–7; and (4) a conspiracy to violate the anti-kickback statute and to defraud the Government in violation of 18 U.S.C. § 371, see id., Count 1. Through his counsel, Dr. Picciotti argued that the Government has failed to present sufficient evidence to meet its burden of proof for any of the four categories of charges.

For the reasons set forth below, I find, after examining the evidence in the light most favorable to the Government, that the Government has presented sufficient evidence from which a reasonable jury could conclude that all of the elements of the crimes charged in the Indictment have been proved beyond a reasonable doubt.

### Legal Standard Governing Motions for Judgment of Acquittal

Rule 29(a) provides:

Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

Fed.R.Crim.P. 29(a). The legal standard governing such motions is well-settled. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that "almost all the Circuits" have adopted a similar formulation of the standard for a motion for judgment of acquittal). The standard requires the court to grant the motion if the court " 'determine[s that] the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any essential elements of the crime charged.' " United States v. Allery, 139 F.3d 609, 610 (8th Cir.1998) (quoting United States v. Robbins, 21 F.3d

---

**1.** Rule 29(b) provides:

The court may reserve decision on a motion for judgment of acquittal, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

297, 298 (8th Cir.1994)); *see also United States v. Giampa ("Giampa I"),* 758 F.2d 928, 934 (3d Cir.1985) (holding that, under Rule 29(a), "the district court must determine whether the Government has adduced sufficient evidence respecting each element of the offense charged to permit jury consideration"). Conversely, the court must deny a motion for a judgment of acquittal when, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could [find] the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, "[a] defendant challenging the sufficiency of the evidence bears a heavy burden." *United States v. Casper,* 956 F.2d 416, 421 (3d Cir.1992).

■ "When examining the sufficiency of the evidence, the court reviews the totality of the circumstances." *United States v. Leon,* 739 F.2d 885, 891 (3d Cir.1984). That is, the court must examine all of the evidence presented by the Government taken as a whole, and not consider pieces of the evidence in isolation. *See United States v. Giampa ("Giampa II"),* 904 F.Supp. 235, 320 (D.N.J.1995) (holding that the court must view the evidence " 'not in isolation but in conjunction' ") (quoting *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984) (quoting *United States v. Geaney,* 417 F.2d 1116, 1121 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970))). Further, in evaluating the evidence, the "district court cannot and should not weigh the evidence ... Nor ... is the district court permitted to make credibility determinations. The district court is confined solely to its assessment of the sufficiency of the Government's evidence." *Giampa,* 758 F.2d at 934–35.

Guided by this standard, I will examine the sufficiency of the evidence, in the light most favorable to the Government, for the four categories of allegations in the Indictment, as described by Dr. Picciotti's counsel during oral argument on March 11, 1999.

### Examining the Sufficiency of the Evidence Presented by the Government

#### 1. Mail Fraud

■ The Indictment alleges that Dr. Picciotti:

> did knowingly and willfully devise a scheme and artifice to defraud HHS and the Medicare program by means of false and fraudulent pretenses, representations and promises, in that Picciotti caused the placement of orders for DME [durable medical equipment] and supplies from BKA, which orders were reimbursed by Medicare, without disclosing his receipt of unlawful payments from BKA and his ownership interest in BKA.

Indictment, Counts 8–14, ¶ 2. The conduct alleged in the Indictment, if proven, violates 18 U.S.C. § 1341, which prohibits mail fraud. In *United States v. Universal Rehabilitation Services,* the Third Circuit summarized the elements that the Government must prove to demonstrate that a defendant has violated the mail fraud statute as follows:

> "The mail fraud statute, 18 U.S.C. § 1341, proscribes any scheme or artifice to defraud in which the defendant participated with the specific intent to defraud and in which the mails were used 'in furtherance of the fraudulent scheme.' " [*United States v. Coyle,* 63 F.3d 1239, 1243 (3d Cir.1995).] "Proof of specific intent ... may be found from a material misstatement of fact made with reckless disregard for the truth." *United States v. Hannigan,* 27 F.3d 890, 892 n. 1 (3d Cir.1994). As such, the government must prove that a scheme to defraud existed, that each defendant participated in that scheme, and that each participated with specific intent to defraud. *United States v. Pflaumer,* 774 F.2d 1224, 1233 (3d Cir.1985).

*United States v. Universal Rehabilitation Servs.*, 167 F.3d 171 (3d Cir.1999). The Government need not prove that the defendant was personally "involved with the actual mailing ... so long as" the Government proves that the defendant had "knowledge that the use of mails would follow in the ordinary course of business or that such use can reasonably be foreseen." *Id.* at 173; *see also Pereira v. United States*, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (holding that a "mailing" as used in the mail fraud statutes occurs when the defendant "does an act with knowledge that the use of the mails will follow in the ordinary course of business").

■ In its case-in-chief, the Government has presented evidence intended to prove that Dr. Picciotti committed two forms of mail fraud. First, he allegedly filed a false application with Medicare for a "provider number" on behalf of BKA, in which he failed to reveal that he owned and/or operated BKA. The application allegedly requires disclosure of such information. Second, he allegedly filed Certificates of Medical Necessity that were false, because he reported on the Certificates that several patients had lymphedema, when the medical records for those patients revealed that they did not suffer from lymphedema.

With respect to the false "provider application," Thomas Deveraux, the liaison between the durable medical equipment manufacturer that supplied equipment to BKA, and BKA, testified that Dr. Picciotti was his only contact at BKA and that he, Deveraux, negotiated the manufacturer's contract with BKA exclusively through Dr. Picciotti. Kathy Clark and Michelle Mascioli, two administrative employees of Associated Podiatrists of South Jersey ("Associated Podiatrists"),[2] testified that Dr. Picciotti directed them to prepare paperwork for BKA, that Dr. Picciotti had control of the BKA checkbook, and that Dr. Picciotti ordered them to forge Barbara

Kay's name on BKA checks. Inspector Daniel Forrester, who was one of the case agents who investigated the case on behalf of the United States, also testified that Dr. Picciotti received several payments from BKA. Finally, there is evidence that Dr. Picciotti caused the application for a provider number for BKA to be mailed to Medicare.

With respect to the false claims, the Government has presented testimony and documentary evidence that Dr. Picciotti completed Certificates of Medical Necessity on which he reported that patients had lymphedema, when the medical records for those patients do not confirm such a diagnosis. Further, there has been testimony that, during the relevant time period alleged in the Indictment, Medicare only paid for such pumps when they were prescribed for patients with lymphedema, and not for any other condition. There is also evidence that Dr. Picciotti directed that these allegedly false Certificates of Medical Necessity be mailed to Medicare. In sum, I find that the totality of the evidence, when viewed in the light most favorable to the Government, provides the jury with a sufficient basis upon which to conclude beyond a reasonable doubt that the Government has proven all of the elements of mail fraud.

■ During oral argument, Dr. Picciotti's counsel contended that this evidence is insufficient to prove mail fraud, because there was no testimony that any of the payments made by Medicare were for unnecessary or excessive treatment, and not for real medical need. Such evidence, however, is immaterial. To prove that Dr. Picciotti submitted a false claim, the Government merely needs to demonstrate that Dr. Picciotti knowingly provided materially false information when he completed the Certificate of Medical Necessity. There has been testimony presented that Dr. Picciotti falsely reported that patients had

---

**2.** Associated Podiatrists is a partnership, owned and operated by Dr. Picciotti and his partner, Dr. Angelo Luzzi.

lymphedema in order to obtain Medicare reimbursement for the pumps. Since during the relevant period alleged in the Indictment, Medicare would not pay for lymphedema pumps for any medical condition other than lymphedema, the statement that a patient had lymphedema, if false, is a material falsehood. *See, e.g., Universal Rehabilitation Servs.,* 167 F.3d 171 (holding that, although Medicare paid for speech therapy treatment generally, defendants' false statements to obtain reimbursement from Medicare for speech therapy treatment in circumstances under which Medicare would not pay constituted mail fraud).

█ Dr. Picciotti's counsel also argued that the evidence fails to demonstrate either a "tangible" or an "intangible" loss. Congress has "limited the scope of the mail fraud statute to the protection of money or property rights [and an] intangible rights theory of mail and wire fraud ... when there exists a fiduciary relationship between the victim and the accused." *United States v. Neufeld,* 908 F.Supp. 491, 499 (S.D.Ohio 1995). Dr. Picciotti's counsel contended that there was no "intangible" loss, because Dr. Picciotti had no fiduciary duty to the United States. Further, he urged that there was no "tangible" loss, because the Government paid money that it would have paid regardless of the alleged false claim since the pumps were used for a genuine medical need. The testimony presented by the Government, however, reveals that, during the relevant period alleged in the Indictment, Medicare would only pay for pumps prescribed for the treatment of lymphedema and not for any other condition. Thus, there is evidence that Medicare would not have paid these claims but for Dr. Picciotti's allegedly false statement that the patients had lymphedema. As a result, there is evidence from which the jury could conclude, beyond a reasonable doubt, that the Government suffered a tangible loss by paying for claims that it would not otherwise have considered reimbursable.

## 2. Kickbacks from Leon SCD

█ The Indictment alleges that Dr. Picciotti:

did knowingly and willfully solicit and receive remuneration (including a kickback, bribe and rebate), directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering a good, facility, service, and item for which payment was made in whole or in part under subchapter XVII (Medicare) of the Social Security Act, in that [Dr.] Picciotti solicited and received money from Jack Leon and Leon SCD in return for arranging for purchasing, and ordering, DME and supplies.

Indictment, Counts 2–4, ¶ 2. To prove this allegation, the Government must show that Dr. Picciotti knowingly or willfully solicited and/or received remuneration in exchange for referring patients to Leon SCD for lymphedema pumps or other goods for which Medicare paid Leon SCD.

During the Government's case, George Wozunk ("Wozunk"), a salesman for Leon SCD, testified that Dr. Picciotti received a kickback by means of a sham lease, in exchange for making referrals to Leon SCD. The Government also played the tape recording of a telephone conversation between Wozunk and Dr. Picciotti, from which the jury could conclude, beyond a reasonable doubt, that Dr. Picciotti offered to make referrals to Wozunk and Leon SCD in exchange for the rental payments made pursuant to the sham lease.

In addition, there was testimony presented that the office space leased by Dr. Picciotti to Leon SCD was unused by Leon SCD. From this and other testimony presented by the Government, I find that a reasonable jury could conclude that this lease was a "sham" and used as a subterfuge to conceal the payment of kickbacks from Leon SCD to Dr. Picciotti. From this evidence, as well as the testimony of

Wozunk and the taped conversation between Wozunk and Dr. Picciotti, I find that there is sufficient evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that Dr. Picciotti engaged in the conduct alleged in the Indictment.

■ Dr. Picciotti's counsel has argued that this evidence is insufficient to prove the allegations of kickbacks, since there has been no evidence presented that Leon SCD actually received any referrals from Dr. Picciotti. Indeed, Dr. Picciotti's counsel contended that, to the contrary, the evidence demonstrated that Leon SCD complained to Dr. Picciotti that it was not receiving referrals. During oral argument, however, Dr. Picciotti's counsel admitted that Leon SCD received at least one referral. Moreover, the Government need not prove that Leon SCD actually received referrals, but merely that Dr. Picciotti solicited or received payments as an inducement, that is, as encouragement, to refer patients to Leon SCD. In other words, the Government need only prove that the money was paid in exchange for the promise of referrals. It need not prove that Dr. Picciotti actually produced those referrals.

### 3. Kickbacks from BKA

■ The Indictment alleges that Dr. Picciotti:

> did knowingly and willfully solicit and receive remuneration (including a kickback, bribe and rebate), directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering a good, facility, service, and item for which payment was made in whole or in part under subchapter XVI-II (Medicare) of the Social Security Act, in that [Dr.] Picciotti solicited and received money from B.K. and BKA in return for arranging for purchasing, and ordering, DME and supplies.

Indictment, Counts 5–7, ¶ 2. To prove this allegation, the Government must demonstrate that Dr. Picciotti knowingly or willfully solicited and/or received remuneration in exchange for referring patients to BKA for lymphedema pumps or other goods for which Medicare paid BKA.

Inspector Forrester testified that Dr. Picciotti received checks from BKA. Further, as the defense admitted during oral argument, all but two of the pumps ordered from BKA were the result of referrals by Dr. Picciotti or Dr. Luzzi, who was Dr. Picciotti's partner at Associated Podiatrists. This evidence provides a sufficient basis from which a reasonable jury could conclude, beyond a reasonable doubt, that Dr. Picciotti solicited and/or received kickbacks from BKA.

Dr. Picciotti's counsel argued that this evidence simply demonstrates that Dr. Picciotti was helping Barbara Kay, the woman with whom he had a child and a close relationship. This argument, however, asks me to weigh the evidence, which I cannot do in deciding a Rule 29 motion. *See United States v. Giampa*, 758 F.2d 928, 934–35 (3d Cir.1985) (holding that a district court may not weigh the evidence or assess credibility in deciding a Rule 29 motion). Dr. Picciotti is free to make this argument in his defense, but I cannot consider it on a Rule 29 motion.

### 4. Conspiracy

■ The Indictment alleges that Dr. Picciotti "did knowingly and willfully combine, conspire, confederate and agree with others to:"

> (a) solicit and receive remuneration, (including a kickback, bribe and rebate), directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering, and arranging for or recommending purchasing, leasing, and odering [sic] any good, facility, service, and item for which payment may be made in whole or in part under the Medicare Program, in viola-

tion of [42 U.S.C. § ] 1320a–7b(b)(1)(b); and

(b) defraud the United States and its agencies, to wit HHS, by submitting Medicare claims and receiving Medicare payments to which they were not entitled and by impairing, impeding and obstructing the lawful and legitimate functions of HHS in administering health case and health insurance plans, including Medicare.

Indictment, Count 1, ¶ 11. To prove this allegation, the Government must demonstrate that a conspiracy was formed for the purpose of violating the anti-kickback statute and/or defrauding the Government, that Dr. Picciotti willfully became a member of the conspiracy, and that at least one member of the conspiracy performed an overt act in furtherance of the conspiracy. *See United States v. Universal Rehabilitation Servs.*, 167 F.3d 171 (3d Cir.1999).

As discussed above, there is ample evidence that Wozunk, Leon SCD, and BKA transmitted money to Dr. Picciotti through a "sham" lease (Leon SCD) or check and cash (BKA), in violation of the anti-kickback statute. As reflected in their taped telephone conversation, Wozunk and Dr. Picciotti clearly acted in concert. Thus, there is evidence that a conspiracy was formed with the purpose of violating the anti-kickback statute, that Dr. Picciotti willfully and knowingly joined the conspiracy, and, that one or more of the conspirators performed an overt act in furtherance of the conspiracy. *See United States v. Uzzolino*, 651 F.2d 207, 214 n. 13 (3d Cir. 1981) (holding that, to prove a conspiracy, the Government must demonstrate: "(1) the combination of two persons, (2) a real agreement, (3) an unlawful purpose, and (4) an overt act by one of the conspirators"). Accordingly, I find that there is sufficient evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that Dr. Picciotti conspired to violate the anti-kickback statute.

▮ There is also sufficient evidence to permit the jury to conclude beyond a reasonable doubt that Dr. Picciotti conspired to defraud the Government in violation of 18 U.S.C. § 371. As I found above, the Government has presented evidence from which the jury could conclude, beyond a reasonable doubt, that Dr. Picciotti filed a false application with Medicare for a "provider number" on behalf of BKA, in which he failed to disclose that he had an ownership interest in BKA and/or operated BKA. Further, there is evidence that Dr. Picciotti filed or caused the application to be filed, that he had an ownership interest in the company and/or operated it, and that Barbara Kay signed the application, knowing that Dr. Picciotti's involvement with BKA had been falsely and willfully omitted. *See Universal Rehabilitation Servs.*, at 173 ("A defendant need not personally be involved with the actual mailing to be liable so long as there was knowledge that the use of mails would follow in the ordinary course of business or that such use can reasonably be foreseen."). From this evidence, the jury could reasonably conclude, beyond a reasonable doubt, that Dr. Picciotti conspired to defraud the Government.

## Conclusion

For the reasons set forth above, I find that, after examining the evidence in the light most favorable to the government, there is sufficient evidence from which a reasonable jury could conclude, beyond a reasonable doubt, that Dr. Picciotti committed the crimes alleged in the Indictment. Accordingly, I will deny Dr. Picciotti's motion for a judgment of acquittal under Rule 29(a). I will enter an appropriate order.

## ORDER

This matter having come before the Court on March 11, 1999, the oral motion of Defendant, Joseph Picciotti, for a judgment of acquittal, pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, Bruce A. Levy, Esq., Assistant United

States Attorney, and Robert M. Hanna, Esq., Assistant United States Attorney, appearing on behalf of the United States of America, and Carl D. Poplar, Esq., and Teri S. Lodge, Esq., of Poplar & Eastlack, A Professional Corporation, appearing on behalf of Defendant, Joseph Picciotti; and,

The Court having considered the oral argument of counsel presented on March 11, 1999, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 16th day of March, 1999, hereby ORDERED that the motion of Defendant, Joseph Picciotti, for a judgment of acquittal is DENIED.