**UNITED STATES of America, Plaintiff,**

**v.**

**Charles William SICKLES, Defendant.**

**Crim. A. No. 81–27.**

United States District Court,
D. Delaware.

Oct. 6, 1981.

Joseph J. Farnan, Jr., U. S. Atty., Theopalis K. Gregory, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Craig A. Karsnitz, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant.

## OPINION

STAPLETON, District Judge:

At the conclusion of a one week jury trial, defendant Charles William Sickles was convicted on twelve counts of a sixteen count Indictment for violation of federal firearm laws. On August 19, 1981, six days after the jury returned its verdict, defendant filed a Motion for Judgment of Acquit-

tal or New Trial pursuant to Federal Rules of Criminal Procedure 29(c) and 33. In support of his motion, defendant asserts four grounds for error.

## I

The government originally charged defendant Sickles, together with three co-defendants, in a twenty-six count Indictment. Approximately ten days prior to trial, subsequent to several motions by co-defendants and after considering Mr. Sickles desire to participate in his own defense, the Court severed the trial of Mr. Sickles from his co-defendants. A twenty count Indictment remained against Mr. Sickles; prior to trial the government dropped four of these counts, leaving the sixteen count Indictment for which Mr. Sickles was tried.[1]

Counts I, IV, X, and XXIII each charged the defendant with making a false statement in connection with acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6). The first offense occurred on November 21, 1980; the next two offenses occurred on November 24, 1980; and the fourth offense was on February 21, 1981. No entrapment defense was raised as to these counts, and defendant was convicted on all of them.

Counts II, V, XI and XXIV each charged the defendant with unlawful receipt of a firearm while under Indictment in violation of 18 U.S.C. § 922(h)(1). These offenses also occurred on November 21, 1980, November 24, 1980 (two offenses), and February 21, 1981. The defendant asserted the entrapment defense for each of these counts, except the one occurring on February 21, 1981. The defendant was convicted on all four of these counts.

Counts III, VI, VIII and XII each charged the defendant with unlawful sale of a firearm to one not of the same state, in violation of 18 U.S.C. § 922(a)(5). All of these sales took place on November 24, 1980, and the defendant asserted the entrapment defense to each charge. Defendant was convicted on two sales made to undercover agent Richard Schoerner of the

Bureau of Alcohol, Tobacco & Firearms (ATF), but was acquitted on the two sales made to undercover agent James Markowski (also of ATF).

Count XVI charged defendant with aiding and abetting an unlawful sale to one not of the same state in violation of 18 U.S.C. § 922(a)(5). This sale was made by Alfred Weakland, an indicted co-conspirator of defendant Sickles, to agent Markowski on May 1, 1981. Defendant Sickles asserted the entrapment defense, and he was convicted on this count.

Count XIX charged the defendant with unlawful possession of a firearm after conviction of a felony in violation of 18 U.S.C. (App.) § 1202(a)(1). The date of the charged possession was May 21, 1981. The defendant did not assert entrapment, and he was convicted on this count.

Count XXV charged the defendant with unlawfully engaging in the business of dealing in firearms in violation of 18 U.S.C. § 922(a)(1) during the period from July 23, 1980 to May 21, 1981. The defendant did not raise the entrapment defense, and was acquitted on this count.

Count XXVI charged the defendant with conspiracy with others to unlawfully transfer firearms (18 U.S.C. § 922(a)(5), *supra*) and to unlawfully do business in firearms (18 U.S.C. § 922(a)(1) *supra*). The defendant did not assert entrapment, and he was acquitted on this count.

## II

A brief summary of the events leading up to the Indictment is helpful in deciding defendant's current motion. After receiving information from a confidential source that Charles William Sickles was unlawfully providing firearms to members of the Adamic Knights of the Ku Klux Klan (AK) of which Sickles was Imperial Wizard, New England ATF agent James Markowski (using the undercover name Jimmy Martin) contacted Sickles by phone, on July 23, 1980, at Sickles's place of employment, Main Line Coin & Stamp in Philadelphia.

---

1. The remaining counts retained the numbering of the original Indictment.

Over the next few months, agent Markowski remained in frequent contact with Sickles, usually through telephone calls placed to defendant Sickles at Main Line Coin & Stamp or at Sickles's residence, 1014 Timberwyck Road in Wilmington, Delaware. The substance of these communications usually concerned Markowski's interest in the AK and his desire to obtain firearms through Sickles (Markowski told Sickles he could not purchase weapons directly because he was a convicted felon).

On August 30, 1980, as a result of the previous telephonic and written communication, agent Markowski, along with agent Richard Schoerner (using the undercover name Rick Shanley), met personally with defendant Sickles and Frank Stillings, a fellow AK member and an indicted co-conspirator, in Rhode Island. At this meeting, Markowski and Schoerner were inducted into the AK, which included being administered a blood oath. Markowski also met with Sickles, when Sickles traveled to New England on September 25, 1980. At this meeting, Sickles informed Markowski that he and Schoerner were in the AK's elite Schutz-Staffel Unit (SS).

The next personal meeting was on November 24, 1980 when the New England agents traveled sought to acquire firearms from the defendant. While at defendant Sickles's Wilmington residence, Sickles sold Markowski a 12 gauge shotgun. The agents and Sickles, accompanied by his wife, Patricia Sickles and Frank Stillings, indicted co-conspirators, then traveled to two Delaware gun stores. At Burkhard's, the defendant purchased a Colt revolver which he sold to Agent Schoerner; Patricia Sickles purchased a 357 Magnum which was sold to Agent Markowski. At Miller's, defendant purchased a 12 gauge shotgun which he sold to Schoerner.

After the agents left Delaware on November .25, 1980, Markowski and Sickles continued to engage in numerous phone conversations, virtually all initiated by Markowski. Again, the main subject matter was the AK and Markowski's desire to acquire additional firearms. On May 1, 1981

Sickles arranged the transfer of a Clerke revolver from fellow AK member and indicted co-conspirator, Alfred Weakland. Markowski also traveled to Delaware to receive this firearm.

After this final transfer, Markowski maintained phone contact with Sickles. On May 21, 1981, a search warrant was executed at the 1014 Timberwyck Road residence by a Delaware ATF agent. The search turned up two firearms. The Indictment was returned on June 3, 1981.

## III

Defendant first attacks the verdicts of guilty as to Counts VI and XII as "totally inconsistent" with the verdicts of not guilty as to Counts III and VIII; and therefore urges that these two guilty verdicts should be overturned. All four counts arise out of the events of November 24, 1980 and involve charges of unlawful sale of a firearm to a person not of the same state. The jury acquitted Sickles for the two transactions involving agent Markowski on that day, but convicted for the two transactions involving agent Schoerner.

■ With respect to each of these four counts, the defendant asserted the defense of entrapment. This defense requires admission of guilt of all the elements of the crime. *United States v. Watson*, 489 F.2d 504, 507 (3d Cir. 1973). If the defendant presents some evidence that government agents induced him to commit the crime, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *Id.* at 510–11. Defendant thus asserts that the jury's acquittal for the two transfers to Markowski establish that the government failed to meet its burden on proving predisposition; and since the government had the same burden with respect to the two transfers to assisting agent Schoerner on the same day arising out of the same circumstances and involving the same evidence, the verdicts of guilty with respect to the two sales to Schoerner should not be permitted to stand.

■ There is no need, however, to decide the question of consistency that the defendant raises. It is settled law that consistency in criminal verdicts is not required. *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Uzzolino*, 651 F.2d 207 (3d Cir. 1981); *United States v. Brandon*, 633 F.2d 773 (9th Cir. 1980); *United States v. Hatrak*, 588 F.2d 414, 418 (3d Cir. 1978); *United States v. Alonzo*, 571 F.2d 1384, 1387 (5th Cir. 1978); *United States v. Ordner*, 554 F.2d 24, 30 (2d Cir. 1977). *See Hamling v. United States*, 418 U.S. 87, 101, 94 S.Ct. 2887, 2899, 41 L.Ed.2d 590 (1974). The rule is followed even where the same evidence is offered in support of each count. *E. g., United States v. Lambert*, 463 F.2d 552 (7th Cir. 1972); *United States v. Vastine*, 363 F.2d 853 (3d Cir. 1966).

The rationale for the rule, to protect the special prerogatives of the jury, was stated in the early case of *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932):

The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed to lenity.

That the verdict may have been the result of compromise or of a mistake on the part of the jury is possible. But a verdict cannot be upset by speculation or inquiry to such matter.

This rationale, as shown by the continued vitality of the doctrine in the case law, remains applicable today. *See generally,* Perkins *Dealing with the Inconsistent Verdict,* 15 Crim.L.Bul. 405 (1979).

Thus, while it is true, as defendant asserts, that many of the cases applying this rule have gone on to observe that the challenged verdicts were not necessarily inconsistent, the rule does not require the Court to make such an inquiry. I find it sufficient to observe that this is not "a rare case [in which] such verdicts demonstrate that there was no legal basis for the jury decisions." *United States v. Uzzolino*, 651 F.2d at 213 citing *United States v. Hannah*, 584 F.2d 27 (3d Cir. 1978).[2]

## IV

■ Defendant also challenges the admission, over defense objections, of various references to the Klan and certain exhibits relating to the Klan. The only specific evidence mentioned is the blood oath taken by the undercover agents (GX–6), a redacted version of the rules and regulations of the AK (GX–8), and the Klan card issued to Agent Markowski (GX–18). Defendant objects to this (and presumably other Klan-related) evidence as either irrelevant, or, if relevant, substantially outweighed by the danger of unfair prejudice, and thus excludable under Federal Rule of Evidence 403.

The government made an offer of proof of the contested items, among others, at a pre-trial conference. Pursuant to the government's offer, I preliminarily determined (and reaffirmed this finding at trial) that the items were relevant in either one of two areas.

Count XXVI charged defendant Sickles with a conspiracy, with severed co-defendants, to transfer firearms to persons of other states and to do business in firearms. The government's theory was that this was a conspiracy among several Klan members and associates with a motive of expanding the AK and arming its members. For this reason, evidence of relationships between the alleged members of the conspiracy and of the character of the organization to which they were committed was relevant. "The prosecution [is] entitled to prove the

---

**2.** In *Hannah*, the court found the doctrine of inconsistent verdicts inapplicable because under the government's own trial theory the count on which the defendant was acquitted required exactly the same acts as the count on which he was convicted, and thus did not constitute a discrete offense. The Court therefore found the government's case on the latter count insufficient as a matter of law.

underlying purpose and motive of conspirators in order to convince the jury beyond a reasonable doubt that [the defendant] had in fact unlawfully conspired. . . ." *Anderson v. United States*, 417 U.S. 211, 221, 94 S.Ct. 2253, 2261, 41 L.Ed.2d 20 (1974). *See United States v. DiFrancesco*, 604 F.2d 769, 774–75 (2d Cir. 1979); *United States v. Baumgarten*, 517 F.2d 1020, 1029 (8th Cir. 1975); *United States v. Bazinet*, 462 F.2d 982, 991 (8th Cir.), *cert. denied* 409 U.S. 1010, 83 S.Ct. 453, 34 L.Ed.2d 303 (1972). Thus, for example, evidence showing agent Markowski became a member of the Klan in order to obtain guns and evidence showing the purposes of the Klan was relevant to proving the conspiracy.

In addition, the defendant asserted an entrapment defense as to several of the counts. Thus, since the defendant founded and was the Imperial Wizard of the AK, evidence showing the AK believed in arming members and was indifferent to "persecution and prosecution" was relevant. Similarly, because Sickles made Markowski and Schoerner members of his SS unit, evidence showing the SS was the "strong arm" branch of the AK was relevant. This type of evidence shed light on the defendant's predisposition to commit the charged offenses. "[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue." *United States v. Russell*, 411 U.S. 423, 429, 93 S.Ct. 1637, 1641, 36 L.Ed.2d 366 (1973) quoting *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).

■ Thus, with respect to each piece of contested evidence proffered both before and during trial, I made the initial determination that it would be relevant to at least the conspiracy or entrapment issues. In addition, evidence was admitted only after deciding that it passed the balancing test of Rule 403. The defense conceded that some mention of the Klan was unavoidable and even necessary; in fact, numerous references to the Klan were made as part of defendant's own case. Since some mention

of the Klan was required, defendant cannot assert prejudice on this ground. I excluded Klan-related evidence when probative value appeared slight or cumulative and potential prejudice from inflammatory material appeared high. Thus, for example, a Klan robe was excluded, and portions of the AK's rules and regulations containing potentially inflammatory slurs of various minority groups were excised from the copy of the AK's rules and regulations that were admitted.

Relying on *United States v. Spletzer*, 535 F.2d 950 (5th Cir. 1976), defendant also asserts that the Klan-related evidence should have been handled through a stipulation. The defendant's offer to stipulate here, however, did not extend to the entire scope of the evidence the government sought to introduce; thus, it is unlike *Spletzer*, in which the only benefit the government gained from its refusal to stipulate was the admission of one piece of highly prejudicial information about a former conviction. In addition, the defendant's offer to stipulate does not seem to have been pressed upon the government here.

### V

■ As an element of Counts II, V, XI, XIX and XXIV, the government had to prove that certain firearms previously traveled in interstate commerce. Defendant asserts that improper expert testimony on this element requires reversal of the guilty verdicts on these counts.

Specifically, the defendant objects to aspects of the testimony of "interstate nexus" expert Ben Cain of ATF as improper under Federal Rule of Evidence 702. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Mr. Cain's testimony was clearly proper in order to establish the place of manufacture of the guns in question. *See, United*

States v. Ressler, 536 F.2d 208, 214 n. 5 (7th Cir. 1976); *United States v. Stine*, 458 F.Supp. 366, 371 (E.D.Pa.1978). Mr. Cain based his opinion on this issue on the information about the manufacturer on the gun itself and his knowledge gained through experience and treatises about the location of the gun manufacturer. The government had some difficulty and encountered some confusion in establishing the basis of Mr. Cain's conclusion. During the course of Mr. Cain's examination, he was asked whether, given the information on the gun about the gun's place of manufacture and assuming that each gun was subsequently found in Delaware, he had an opinion about whether the gun had traveled in interstate commerce. After testifying that he did so conclude, on cross-examination Mr. Cain conceded that knowing the state of manufacture and assuming a different state of sale, it required no specialized, expert knowledge to conclude the guns traveled in interstate commerce. The defense then moved to strike this aspect of the testimony as improper under 702.

Given the general course of Mr. Cain's testimony, I decided that striking this aspect of it would have risked confusing the jury even further. I concluded that the questioned testimony was admissible either under 702 as useful to the trier of fact to understand the expert's opinion on the place of manufacture, or under Federal Rule of Evidence 701 as non-expert opinion helpful to a clear understanding of his testimony.

Moreover, I found that under the circumstances here the expert evidence objected to was not subject to the danger of misleading the jury because of "its aura of special reliability and trustworthiness." *See, e. g., United States v. Green*, 548 F.2d 1261 (6th Cir. 1977). Both the questioning of the defense attorney and my instructions to the jury made it clear that the ultimate decision of whether the guns traveled in interstate commerce was for the jury, and that this expert was only drawing on common sense when he opined on this ultimate issue. Nor was this expert testimony likely "to engender vindictive passions" within the jury.

*See United States v. Green*, 548 F.2d at 1268. Finally, defendant's contention that harm requiring reversal resulted from the admission of this testimony is belied by the *unrebutted* evidence of place of manufacture. *See United States v. Ressler*, 536 F.2d at 214 n. 5.

## VI

■ Defendant's final challenge is to the sufficiency of the evidence for a guilty verdict under Count XIX, possession of a weapon after conviction of a felony. The Magnum revolver which is the subject of this count was found during the search of the 1014 Timberwyck residence on May 21, 1981.

■ Defendant was not present at the premises at the time of the search. It is not necessary, however, for the government to prove actual, physical possession; "constructive possession" will suffice. *See United States v. Polk*, 574 F.2d 964 (8th Cir. 1978); *United States v. Crippen*, 459 F.2d 1387 (3d Cir. 1972). Constructive possession may be established by showing that the defendant knowingly had the gun under his "control or dominion." *United States v. Bonham*, 477 F.2d 1137 (3d Cir. 1973); *United States v. Davis*, 461 F.2d 1026 (3d Cir. 1972).

■ Constructive possession may be established by a showing that the firearm was seized at the defendant's residence. *See United States v. Kurck*, 552 F.2d 1321, 1323 (8th Cir. 1977). The defendant argues, however, that the 1014 Timberwyck residence was no longer his residence, since he testified that he was separated from his wife and that he had not lived at that address for the preceding six months. The record does establish, though, that agent Markowski continued to reach the defendant by telephone at the residence as late as May 15, 1981. Although the defendant did testify that he was in and out of the marital relationship and spent most of his time at work, he admitted that he frequented the home at least to do laundry and that he had been at the home at the beginning of May.

Moreover, the evidence shows that when agents visited the Timberwyck residence on November 24, 1980, defendant Sickles showed them a number of firearms including the Magnum revolver and represented that he was the owner. No subsequent conversation or event demonstrated that the defendant has relinquished ownership or control of this firearm. In fact, the record indicates that in his May 15, 1981 conversation with agent Markowski, the defendant stated he had loaned a 357 Magnum to Alfred Weakland. This Magnum was almost certainly the gun in the defendant's residence on November 24, 1980, which was the same gun found hidden in the attic during the May 21, 1981 search.

 When the defendant asserts insufficiency of the evidence to prove the crime charged, the jury's verdict must be sustained "if there is substantial evidence, viewed in the light most favorable to the Government to uphold the jury's decision." *United States v. Continental Group, Inc.,* 603 F.2d 444, 449 (3d Cir. 1979) quoting *Burks v. United States,* 437 U.S. 1, 17, 98 S.Ct. 2141, 2150, 57 L.Ed.2d 1 (1978). *See United States v. Long,* 574 F.2d 761, 762 (3d Cir. 1978). Applying this standard, I conclude that there is substantial evidence to establish constructive possession of the firearm charged.