**UNITED STATES of America,
Plaintiff-Respondent,**

v.

**Terry Louis GANN,
Defendant-Appellant.**

No. 83–3029.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1983.

Decided May 3, 1984.

Kenneth C. Bauman, Asst. U.S. Atty., Portland, Or., for plaintiff-respondent.

Richard D. Senders, Rose & Senders, Portland, Or., for defendant-appellant.

Before FLETCHER and ALARCON, Circuit Judges, and JAMESON,* District Judge.

ALARCON, Circuit Judge:

Defendant Terry Gann appeals from a judgment of conviction of the following counts: (1) possession of an unregistered firearm (i.e., a sawed-off shotgun) in violation of 26 U.S.C. §§ 5845, 5861(d), and 5871; (2) ex-convict in possession of a shotgun in violation of 18 U.S.C.App. § 1202(a)(1); (3) ex-convict in possession of shotgun ammunition, in violation of 18 U.S.C. §§ 922(h), 924(a); (4) ex-convict in possession of a .22 caliber rifle in violation of 18 U.S.C.App. § 1202(a)(1); and (5) ex-convict in possession of rifle ammunition (multiple caliber) in violation of 18 U.S.C. §§ 922(h) and 924(a). The district court sentenced Gann to a five-year prison term for count I, and suspended the imposition of sentence for counts 2 through 5. Gann was placed on probation for five years, the

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

period to run concurrently for each of counts 2 through 5 after completion of the prison term.

Gann seeks reversal alleging that the district court erred in denying his motions (1) to require the election or dismissal of counts due to multiplicity; (2) to suppress the firearms and ammunition seized from his home and car; (3) to suppress oral statements made to his attorney while the search was conducted; (4) to dismiss the indictment because of vindictive prosecution; (5) to exclude expert testimony as to the place where the firearms and ammunition were manufactured. Gann also challenges the denial of his motion for a mistrial and his motion for judgment of acquittal. None of Gann's contentions is meritorious.

## I.

## FACTS

On April 28, 1982, the United States National Bank in Portland, Oregon was robbed of approximately $800 in currency and $18,000 in travelers' checks by Patrick Dussault. Dussault was observed fleeing in a yellow Mustang driven by Gann.

On May 19, 1982, warrants were issued for the search of Gann's home and of a 1972 green Vega automobile registered in his name.

A brown athletic bag was recovered from the vehicle. Inside the athletic bag was a black and red nylon bag which contained a sawed-off shotgun and a box of .20 gauge ammunition. A .22 caliber rifle and ammunition of several different caliber was found in the residence. The rifle was found in the bedroom closet. The ammunition was found in a dresser drawer.

Detective Gary Fantz of the Portland Police Bureau arrested Gann for being an ex-convict in possession of a firearm. Fantz seized the sawed-off shotgun.

On May 20, 1982, Patrick Dussault confessed to robbing a bank on April 23 and April 28, 1982. Dussault stated that Gann was the driver of the getaway car on each occasion. Dussault also told the officers that Gann had a sawed-off shotgun in his possession on these occasions.

On May 27, 1982, an Oregon grand jury returned an indictment charging Gann with being an ex-convict in possession of a firearm. On June 15, 1982, the federal grand jury returned an indictment charging Dussault and Gann with the April 28, 1982 bank robbery. The state firearm charges were dismissed against defendant on June 25, 1982, because the same weapon was used in the bank robbery. The federal prosecutor became aware of the dismissal of the state charges in mid-July, 1982. At that time, the Assistant United States Attorney assigned to the prosecution of Gann requested the Alcohol, Tobacco and Firearms (ATF) Division to investigate the case for federal firearms violations.

The government attempted to convince Dussault that he should testify against Gann should federal firearms charges be filed. He refused.

On July 17, 1982, Gann was arraigned in federal court for the June 15, 1982 bank robbery. On August 17, 1982, the grand jury returned a superceding indictment against Dussault and Gann. A severance motion was granted.

During his own trial, Dussault testified that Gann was involved in the April 23 and April 28 bank robberies. Dussault was convicted. Gann's trial on the robbery charges began on October 26, 1982. Dussault refused to testify. A mistrial was declared after the jury announced it could not reach a verdict.

The grand jury returned an indictment against Gann on this matter on November 23, 1982. During Gann's trial for firearms violations, Dussault again refused to testify. The court refused to compel him to do so because the immunity previously granted Dussault might not extend to this transaction. The jury convicted Gann of all firearm violations on February 4, 1983. The next week Gann was retried on the bank robbery charges. The jury was again unable to reach a verdict and a mistrial was declared. After Gann was sentenced on

the firearms violations, the government moved to dismiss the bank robbery indictment.

## II.

## DISCUSSION

### A. *Multiplicity*

Gann first contends that the court erred in denying his motion for an order requiring the election or dismissal of the multiplicitous counts. He argues that one or more of the counts was duplicated in violation of his right to due process, equal protection and freedom from double jeopardy, and in contravention of Congressional intent in enacting the firearms statutes.

### 1. COUNT 2 AND COUNT 3

The defendant was charged with unlawful possession of a shotgun under § 1202(a) and unlawful receipt of shotgun ammunition under § 922(h).

**1.** This point represents a "thorny issue which has the circuits divided." *United States v. Mayo,* 705 F.2d 62, 76 n. 9 (2d Cir.1983). There is authority for either position, *compare United States v. Larson,* 625 F.2d 67 (5th Cir.1980) and *United States v. Girst,* 645 F.2d 1014 (D.C.Cir. 1979) [prosecution not permitted to proceed under two related statutes] with *United States v. Larranaga,* 614 F.2d 239 (10th Cir.1980) [prosecution may proceed under two related statutes].

Gann cites *United States v. Wiga,* 662 F.2d 1325 (9th Cir.1981) for this proposition as well. While *Wiga* does speak approvingly of the Larson/Girst approach in discussing the need to solve the multiplicity problem, the Ninth Circuit did not rule against dual protections for a single firearm under § 1202(a) and § 922 until *United States v. Conn,* 716 F.2d 550 at 551 (9th Cir. 1983).

**2.** Gann does not cite any authority for this proposition. Our research discloses that the Seventh Circuit did address this issue in *United States v. Oliver,* 683 F.2d 224 (7th Cir.1982). In *Oliver,* the defendant was charged in separate counts with the receipt of a firearm and receipt of ammunition under § 922(h). The court concluded that for purposes of the Act, firearms and ammunition were "interchangable". Thus their simultaneous possession or receipt is a single offense under § 922(h).

The *Oliver* court was not faced with the issue presented to us i.e., can the simultaneous possession of a firearm and ammunition be

Gann contends that the two statutes overlap and proscribe precisely the same criminal conduct.

He argues as follows:

An ex-convict in possession of a single firearm may not be tried and convicted under both § 1202(a) and § 922(h).[1]

The receipt of a firearm and the receipt of ammunition is but one offense under § 922(h).[2]

Therefore, we are told, an ex-convict may not be tried and convicted for the possession of a firearm under § 1202(a) and for the receipt of ammunition under § 922(h) where the firearm and the ammunition are found at the same time and place.

■ The general rule is that a defendant may be prosecuted and sentenced for the same act under separate federal criminal statutes if each statute requires a proof of fact which the other does not. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932)[3].

charged separately under § 922(h) and § 1202(a). The court did not hold that Congress intended firearms and ammunition to be interchangable with respect to the entire federal scheme of firearm-related regulation. Instead, the court in Oliver carefully limited its holding by stating that *"for purposes of § 922(h),* firearms and ammunition are interchangable. .." *United States v. Oliver,* 683 F.2d at 232. It also distinguished the issue it had to address from that presented in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) (for discussion of *Albernaz see infra* ). The court stated in *Oliver:* "two separate statutes were involved in *Albernaz* and there was no indication that Congress did not intend conduct violative of each to be treated as a distinct offense. Here, on the other hand, there is a single statute ..." *Id.* We have concluded that holding in Oliver has no application to the matter *sub judice.*

**3.** In *United States v. Conn,* 716 F.2d 550, 552 (9th Cir.1983) we held that a defendant may not be separately charged under sections 992(h) and 1202(a) App. with possession and/or receipt of different firearms received at the same time and place. Our holding implies that the two statutes do not satisfy the *Blockburger* test when the charge is possession of *firearms.* Here we face a different question not addressed in *Conn* —whether the statutes satisfy the *Blockburger* test when possession of *ammunition and* possession of a firearm is charged.

The *Blockburger* test is a rule of statutory construction; it serves as a means of discerning congressional purpose. The rule does not apply where, for example, there is a clear indication of contrary legislative intent. *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981). The legislative history here does not give us any clear signals.

In *Albernaz* the Supreme Court held that the government could prosecute conspiracy to import marijuana and conspiracy to distribute marijuana as separate and distinct offenses under separate statutes, even though the legislative history was silent as to the availability of alternate charges. As the court noted:

> Petitioners read this silence as an "ambiguity" over whether Congress intended to authorize multiple punishment. Petitioners, however, read much into nothing. Congress cannot be expected to specifically address each issue of statutory construction which might arise.... [I]f anything is to be assumed from Congressional silence on this point, it is that Congress was aware of the Blockburger rule and legislated with it in mind. *Albernaz v. United States*, 450 U.S. 333 at 341–42, 101 S.Ct. 1137 at 1143–44, 67 L.Ed.2d 275.

■ Under the *Blockburger* test, it is clear that illegal possession of firearms under § 1202(a) requires the proof of distinctively different facts than illegal receipt of ammunition under § 922(h).

Under § 1202(a), the government must prove that a felon has "received, possessed, or transported (firearms) in commerce or affecting commerce." Section 922(h) forbids a felon to "receive any firearms or ammunition which has been shipped or transported in interstate or foreign commerce."

Proof that an object is a firearm requires proof of facts which differ vastly from the evidence required to show that an article is in fact ammunition.[4] *See* definitions of

firearms and ammunition in § 921(17) and § 1202(c). Under § 922(h) the government must show that the firearm or ammunition traveled in *interstate commerce*. Section 1202(a) has no such requirement. *See Scarborough v. United States*, 431 U.S. 563, 571–72, 97 S.Ct. 1963, 1967–68, 52 L.Ed.2d 582 (1977) [Court noted that Congress was aware of the distinction between legislation limited to activities 'in commerce' and assertion of full Commerce Clause Power to cover all activity substantially affecting interstate commerce]. The two statutes define "felony" differently: a person who received a firearm while under *indictment* for a felony is chargeable under § 922(h), but not under § 1202(a). *United States v. Batchelder*, 442 U.S. 114 at 121 n. 7, 99 S.Ct. 2198 at 2202 n. 7, 60 L.Ed.2d 755 (1979).

There is admittedly some overlap between § 1202(a) and § 922(h) both as to the conduct they proscribe and the individuals they reach. *United States v. Bass*, 404 U.S. 336, 341–343 and n. 9, 92 S.Ct. 515, 519–520 and n. 9, 30 L.Ed.2d 488 (1971). However, so long as each statutory element requires the proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975).

It is our view that § 1202(a) and § 922(h) require proof of different facts. The district court did not err in its determination that the defendant was properly charged under both statutes.

■ Gann argues that since Congress' intention is unclear we should apply the rule of lenity and compel the government to choose one statute or the other. "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S.

---

**4.** It should be underscored that in the matter before us, the ammunition and the shotgun were not joined together in a single unit, (*e.g.*, a loaded shotgun). The facts demonstrate that Gann was in possession of a *box* of ammunition which was discovered lying next to the shotgun.

81, 83, 75 S.Ct. 620, 822, 99 L.Ed. 905 (1955).

■ In *Albernaz* the appellant also urged the court to invoke the rule of lenity, contending that the legislative history was "ambiguous" on the question of multiple punishment for violation of the related marijuana statutes. *Albernaz v. United States,* 450 U.S. 333 at 342, 101 S.Ct. 1137 at 1144, 67 L.Ed.2d 275. In rejecting this contention, the court emphasized that the touchstone of the rule of lenity is statutory ambiguity. Where Congress has manifested its intention, ambiguity may not be manufactured to defeat that intent. *Ibid,* citing *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). "Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one". *Albernaz,* 450 U.S. at 342, 101 S.Ct. at 1144.

In *United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), the Supreme Court found that nothing in the language, structure, or legislative history of §§ 1202(a) and 922(h) suggests that because of the overlap between the two statutes, a defendant convicted under § 922(h) may be imprisoned for no more than the maximum term specified in § 1202(a). *United States v. Batchelder,* 442 U.S. at 118, 99 S.Ct. at 2201. In so ruling, the court rejected the contention that Congress' statutory scheme for firearm control was ambiguous. *United States v. Batchelder,* 442 U.S. at 121, 99 S.Ct. at 2203. This Circuit has also held that there is no ambiguity between § 1202 and § 922 that requires the application of the rule of lenity. *United States v. Wiga,* 662 F.2d 1325, 1335 n. 14 (9th Cir.1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982).

The meagre legislative history available concerning § 922(h) instructs us that the new law was designed to strengthen the firearm provisions which had been enacted in the Omnibus Bill. See H.Rep. No. 1577, 90th Cong.2d Sess. (1968); S.Rep. No. 1501, 90th Cong.2d Sess. (1968), U.S.Code Cong. & Admin.News 1968, p. 4410. Section 922(h) authorizes a maximum fine of $5,000 and imprisonment for up to five years, while § 1202(a) is punishable by a maximum fine of $10,000 and imprisonment for not more than two years.

It is anomalous to suggest that the rule of lenity, requiring lighter sentences, should be triggered by the adoption of a statute whose stated purpose is to strengthen the existing law and which increases the punishment.

In the matter before us, Gann was charged with possession of a shotgun and receipt of ammunition under separate statutes requiring proof of discrete facts. On the basis of our *Blockburger* analysis, we are satisfied that the district court's decision to allow the government to proceed with separate counts under §§ 1202(a) and 922(h) was proper.

It is also important to note that Gann's testimony demonstrated that he received the shotgun ammunition and the shotgun separately. He testified that he picked up the red bag containing the shotgun at his mother's barn. He placed the red bag in the brown bag which he had brought with him and which already contained the ammunition. In *United States v. Wiga,* 662 F.2d at 1336–37 we upheld multiple counts solely on section 1202(a) for possession of several firearms where there was a showing that the firearms were separately acquired. See also *United States v. Bullock,* 615 F.2d 1082 (5th Cir.1980). We think our analysis in *Wiga* applies with equal force here particularly when the charges were based on two separate statutes.

2. COUNT 4 AND COUNT 5

The defendant was also charged with possession of a rifle under § 1202(a) and receipt of ammunition of separate caliber under § 922(h).

■ Our discussion concerning the shotgun and the shotgun ammunition fully disposes of Gann's challenge to counts 4 and 5. Furthermore, the facts showed that the rifle and the ammunition for several different weapons were separately received and

stored. Gann testified that his father-in-law gave him the rifle while the ammunition was leftover from a hunting trip. The rifle was found in Gann's closet and the ammunition in a dresser drawer. No error was committed in denying Gann's motion for an election or dismissal as to counts 4 and 5.

### 3. COUNT 1 AND COUNT 2

The possession of an unregistered firearm under 26 U.S.C. §§ 5845, 5861(d) and 5871 and possession of a firearm by a felon under § 1202(a) are separate charges.

Gann argues that the central element of both statutes is the same: possession of the firearm. Accordingly, he asserts that since a felon cannot register a firearm, it is unfair to charge him with a separate crime for failing to do so.

■ The same issue was presented to this court in *United States v. Ching*, 682 F.2d 799, 802 (9th Cir.1982). We rejected a similar argument there. We are not persuaded that *Ching* was erroneously decided.

### 4. COUNT 2 AND COUNT 4

The possession of two guns which are separately stored or acquired constitutes two charges under § 1202(a).

■ In *United States v. Wiga*, 662 F.2d 1325, 1336 (9th Cir.1981), the court held that one offense should be charged irrespective of the number of firearms involved "absent a showing that the firearms were stored or acquired at different times and places." Finding that "Wiga purchased the two weapons at different times and in different places," we upheld his separate convictions on each of two counts. Here as in *Wiga*, the firearms were acquired at different times in addition to being stored separately. Thus, the district court's order was proper.

Here, as in *Bullock*, the firearms were stored separately. Thus, the district court's order was proper.

### 5. COUNT 3 AND COUNT 5

The possession of different types of ammunition which were received at different times and stored in different places supports separate units of prosecution for receipt of ammunition under § 922(h).

This court defined "receipt" under § 922(h) as including "knowing acceptance or taking of possession of a firearm." *United States v. Lipps*, 659 F.2d 960, 962 (9th Cir.1981). Gann was illegally in possession of .20 gauge shotgun ammunition, which was found in his vehicle. The government also found 95 rounds of four different calibers of rifle ammunition inside a closet in Gann's home.

In *Wiga*, 662 F.2d at 1337, we stressed that " '[c]ommon sense and logic, however, will not support a holding that the receipt of firearms at separate times must merge into one possession, thus one offense.' " (quoting *United States v. Bullock*, 615 F.2d at 1085–86. To do so would allow convicted felons "to establish armories where all their weapons would be kept ... [and yet] be subject to only a single count of possession, although thousands of illegal and dangerous weapons were received and stockpiled at different times." *United States v. Bullock*, 615 F.2d at 1086.

■ We believe the evil described in *Wiga* and *Bullock* applies with equal force to ammunition stored in separate places. Under such circumstances multiple counts charging a violation of § 922(h) are proper.

### B. *Validity of the Search Warrant*

Gann contends that the district court erred in denying his motion to suppress the firearms and ammunition received during the search of his home and vehicle pursuant to federal search warrants. He complains that the facts set forth in the affidavit filed in support of the warrant were stale, and that probable cause did not exist for a search for firearms. Gann also argues that even if there was probable cause linking him to the bank robbery, the information used by the government in its affidavit did not establish probable cause with

respect to Gann's Vega automobile or his residence.

■ The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises. *United States v. Collins*, 559 F.2d 561, 564 (9th Cir.), *cert. denied*, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977) [where six weeks passed between the bank robbery and the issuance of the warrant]. The affidavit in the present case stated that the clothes to be seized were owned by the defendant and that he had been seen wearing them on numerous occasions since the time of the rehearing. Only three weeks had elapsed since the bank robbery. There was a sufficient basis for the magistrate to believe that the items sought by the warrant were located on the premises to be searched at the time the warrant was executed.

Gann's contention that there was no probable cause to search for weapons is directly controverted by the statement of Mr. Simms. Simms alleged that shortly after the robbery he was threatened by an armed male later identified as Gann. This male, who pushed his way into Simms' residence told Simms that the gun was in his carrying bag. The affidavit further sets out Agent Cline's perception that bank robbers frequently use firearms and leave such weapons, ammunition and clothing in their cars or residences. Viewing these facts on the basis of the "totality of the circumstances" test enunciated in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983), there was a fair probability that such evidence would be found in Gann's vehicle or residence.

The information contained in the affidavit was sufficient to establish the specific probable cause necessary to search Gann's home and car. The required nexus between the items to be seized and the place to be searched rests not only on direct observation, but on the type of crime, the nature of missing items, the extent of the suspects' opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property. *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir.1976). Here, as in *Spearman*, the ongoing nature of the bank robberies, the personal nature of some of the items sought (*e.g.*, hat, firearms, ammunition, items of identification, credit cards, sports-type zipper bag), and the testimony of Agent Cline regarding the propensity of bank robbers to hide evidence of their crimes in their cars or residences make it reasonable for the magistrate to have inferred that the items would be hidden in the places named in the warrant.

The district court correctly concluded that the facts were sufficient to establish probable cause that the items sought were still in Gann's home or in his automobile.

## C. *Conversation with Counsel*

Gann contends that the trial court erred in denying his motion to suppress the statements made over the telephone during the search.

After the agents found the bag containing the shotgun and shotgun ammunition in Gann's car, Detective Fantz of the Portland Police bureau decided to arrest him. Gann was in the house talking on the telephone in the presence of several law enforcement officers who were searching the house. One of the agents told Detective Fantz: "I think he is talking to his lawyer." Detective Fantz waited in the room in order to arrest Gann as soon as he got off the phone. Detective Fantz heard Gann state: "Looks like I'm going to have to go downtown," followed by the words "ex-con in possession, I guess." The government later introduced these statements to prove that Gann had knowledge of the shotgun and ammunition found in his vehicle.

Gann argues that the sixth amendment bars the admission of a conversation between an attorney and his client into evidence at trial. *United States v. Irwin*, 612 F.2d 1182 (9th Cir.1980).

Because Gann knew, or should have known, that third parties were present, his attorney-client privilege claim must fail. The burden of proving that the privilege applies is upon the party asserting it. *United States v. Landof,* 591 F.2d 36, 38 (9th Cir.1978). Here, Gann cannot show that his conversation with his attorney was made in confidence. The statement in question was made with the knowledge that he was surrounded by officers searching his residence. There is no evidence that Detective Fantz purposely positioned himself by the phone so that he could eavesdrop on a privileged communication. The evidence shows, instead, that the officer merely walked into the room and waited for Gann to complete his call.

Gann also contends that the government's "eavesdropping" constitutes a violation of the fourth amendment. Specifically, he asserts that he had an expectation of privacy in this conversation. The facts do not show that Gann had a reasonable expectation of privacy.

Gann's residence was searched pursuant to a warrant. Thus, Detective Fantz was lawfully on the premises when the statement was made. "If, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983). Under *Brown,* Detective Fantz was entitled to gather any incriminating evidence which he was capable of perceiving through any of his senses. He had no duty to deafen himself to Gann's words.

The district court properly denied Gann's motion to suppress the oral statements he made in the presence of law enforcement officers lawfully within the premises.

### D. *Vindictive Prosecution*

Gann alleges that the court erred in denying the defendant's motion to dismiss the indictment because of vindictive prosecution.

He argues that the firearm charges were brought against him because he moved for an acquittal after the court declared a mistrial on the bank robbery charges. He claims that the government could have indicted him as early as May 19, 1982 and that there was evidence that established that there was an on-going investigation.

The evidence is to the contrary. The Assistant United States Attorney in charge of the prosecution testified that the delay in proceeding with the firearms charges was based solely on his decision to wait for additional information necessary for the preparation of his case.

The investigation was not complete as of May 19, 1982. The documents necessary to prove the registration charge were not received until some time in September. The indictment was delayed until it finally could be ascertained whether Patrick Dussault would testify against Gann. The shotgun found in Gann's car had no fingerprints on it. The prosecutor felt Dussault's testimony might be crucial to connect Gann to the offense. Dussault could have supplied direct evidence that Gann had possession of the shotgun. Prior to the bank robbery trial in June of 1982, the government sought to secure the testimony of Dussault against Gann for both the robberies and the firearm violations through a plea bargain arrangement. When that effort failed, the prosecutor, decided to obtain his testimony by compulsion, pursuant to 18 U.S.C. § 6001 as soon as Dussault's trial was over. In November, 1982, after his trial, Dussault was subpoenaed to appear before the grand jury to testify on the firearms violations. On November 15, 1982, after the United States Marshal advised the government that the subpoena would delay the sentencing hearing, Dussault was excused from testifying before the Grand Jury. Eight days later, the government presented the firearm case against Gann to the Grand Jury.

A defendant seeking dismissal for vindictive prosecution has the initial burden of demonstrating an appearance of vindictiveness. This "involves a showing that the prosecution has re-indicted the de-

fendant and increased the severity of the charge, after the defendant has exercised a constitutional or statutory right." *United States v. Burt*, 619 F.2d 831, 836 (9th Cir. 1980) (citation omitted). A demonstration that "the prosecution in fact acted with a malicious or retaliatory motive" is not required. *Id.* Rather, vindictiveness is inferred. The burden then shifts to the prosecution to prove that the increase in the severity of the charges did not result from any vindictive motive. *Id.*

In the instant matter, after shifting the burden to the prosecution, the trial court ultimately determined that the government did not subject Gann to a vindictive prosecution.

The standard of review in a vindictive prosecution case is not clear. *United States v. Spiesz*, 689 F.2d 1326 (9th Cir. 1982). Some cases have suggested an abuse of discretion standard, *see, e.g., United States v. Demarco*, 550 F.2d 1224 (9th Cir.1977), while others deem the issue to be one of mixed law and fact, calling for the application of the clearly erroneous standard. *See, e.g., United States v. Bendis*, 681 F.2d 561 (9th Cir.1981). In light of the prosecutor's uncontradicted testimony which disclosed the background for the delay in the filing of the case, the trial court's denial of Gann's motion to dismiss for vindictive prosecution was proper under either standard of review.

### E. *Expert Testimony*

Gann argues that the district court erred in denying his objection to the testimony offered by the government witness, Alcohol, Tobacco and Firearms Division firearms enforcement officer Cain, as to his opinion of the location of the manufacturer of the recovered firearms and ammunition.

His principal argument is that proof of the location of a manufacturing plant does not require expert testimony.

Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In *United States v. Sickles*, 524 F.Supp. 506, 512 (D.Del.1981), *aff'd*, 688 F.2d 827 (1982), the court held that the admission of expert testimony relating to the location of the manufacturing plant to prove that certain firearms had previously traveled in interstate commerce was not improper.[5]

■ The court in *Sickles* reasoned that the ultimate decision as to whether the guns traveled in interstate commerce remained within the province of the jury. The expert was only drawing on common sense when he gave his opinion as to the ultimate issue. We agree with the analysis of this question as set forth in *Sickles*.

As the government correctly notes, Cain testified not for the purpose of identifying the location of weapon and ammunition manufacturing plants, but, instead, for the purpose of establishing the particular manufacturer of each of the weapons and ammunition seized. Based on his expert knowledge, he identified the manufacturer from characteristic shell markings and stamps. This testimony was relevant to prove that the objects had traveled in interstate commerce.

■ It is the law of this circuit that "[t]he trial court is vested with broad discretion concerning the admissibility or exclusion of expert testimony and the court's action is to be sustained unless shown to be manifestly erroneous." *Wood v. Stihl*, 705

---

**5.** In *Sickles*, the expert witness testified as to the manufacturing location of certain guns, based on information on the gun itself and his knowledge gained through experience and study about the location of gun manufacturers.

In deciding not to strike the expert's testimony on whether the gun traveled in interstate

commerce, the district court in *Sickles* concluded that the questioned testimony was admissible either under Fed.R.Evid. 702 as useful to the trier of fact in understanding the experts opinion on the place of manufacture, or under Fed.R.Evid. 701 as a non-expert opinion helpful to a clear understanding of his testimony.

F.2d 1101 (9th Cir.1983), (citing *United States v. An Article of Drug,* 661 F.2d 742, 745 (9th Cir.1981).

We find that the decision of the district court allowing Cain, as an expert on weapons and ammunition and their manufacturers to answer questions within the scope of his knowledge, was not manifestly erroneous.

### F. *Motion for a Mistrial*

Gann maintains that the district court erred in denying his motion for a mistrial because of prejudicial testimony of a government witness.

█ Prior to the cross-examination of Special Agent Montee, the court had granted defendant's motion in limine prohibiting the admission of any evidence that Gann was a suspect in a bank robbery. During cross-examination, defense counsel questioned Montee as to his purpose in conducting a particular search of Gann's car. The court cautioned defense counsel of the "doors (that) might open up if he pursued that line of questioning." Defense counsel acknowledged the warning but, nevertheless, proceeded to ask the witness what his purpose was in looking for certain items. The witness responded that "we were looking for things that tied into a bank robbery." The court immediately granted defendant's motion to strike the remark, and directed the jury to disregard it. Gann later moved for a mistrial. The court denied the motion, stating that the "answer was reasonably responsive to the question asked." We agree.

█ Gann argues that the court abused its discretion in denying the motion for mistrial. A mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial impact of the error. *United States v. Escalante,* 637 F.2d 1197, 1203 (9th Cir.1980). The defendant has the burden of proving that there was an abuse of discretion, and, where the court is to review a motion for mistrial, "the power ought to be used with the greatest of caution under urgent circumstances, and for very plain and obvious causes." *Escalante,* 637 F.2d at 1202.

This is not a situation of great urgency where a mistrial should have been granted for very plain and obvious cause. Gann merely asserts that the witness' statement was unresponsive to the question.

The district court forewarned the defense counsel that he was inviting unwanted testimony by his line of questioning. Gann has not persuaded us that the district court abused its discretion.

### G. *Motion for Judgment of Acquittal*

Gann also moved for a judgment of acquittal pursuant to Rule 29 of the Fed.R. Crim.P., stating that the government had not proved that he was knowingly in possession of a shotgun and rifle and that the weapons had travelled in interstate commerce. The district court denied the motion. Gann alleges this was an error.

█ The standard of review for a Rule 29 motion is whether the evidence, considered favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt. *United States v. Hazeem,* 679 F.2d 770, 772 (9th Cir.) *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1982).

█ Our review of the record satisfies us that a rational trier of fact could easily conclude Gann was guilty beyond a reasonable doubt based upon the overwhelming evidence presented against him. The trial court did not err in denying Gann's motion for judgment of acquittal.

The judgment is AFFIRMED.

FLETCHER, Circuit Judge, Concurring:

I concur in the result reached by the majority and I subscribe fully to the majority view that Gann's testimony provided sufficient proof that the arms and ammunition were received separately. Two separate acts of receipt may be charged in separate counts. *See United States v. Bullock,* 615 F.2d 1082 (5th Cir.1980). I would uphold the convictions on counts 2 and 3 and counts 4 and 5 solely on that basis.

I write separately because I cannot agree with the majority's alternate basis for sustaining the convictions on those counts— *i.e.*, that a single possession of arms and ammunition may be charged as two separate offenses under 18 U.S.C. §§ 922 and 1202.

The issue is whether one charge requires proof of a fact that the other does not. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The majority points to three differences between section 922 and section 1202 which meet the *Blockburger* test. Two of these are that section 922 requires proof that the arms travelled in interstate commerce while section 1202 does not, and the two statutes define "felony" differently. In *United States v. Conn*, 716 F.2d 550, 552 (9th Cir.1983) we held that the defendant could not be convicted under both section 922 and section 1202 for receipt and possession of the same weapons. Thus, we implicitly held that these two differences are not sufficient to meet the *Blockburger* test.

The remaining difference between the two counts, on which the majority relies to distinguish *Conn*, is that the section 922 charge requires proof of possession of ammunition while the section 1202 charge requires proof of possession of arms. I think that *United States v. Oliver*, 683 F.2d 224, 232 (7th Cir.1982) was correct in holding that "for purposes of § 922(h), firearms and ammunition are interchangeable ..." Under section 922, possession of a gun with ammunition is treated just like possession of two guns—only one count can be charged. If, as *Oliver* holds, Congress did not intend to make possession of ammunition a separate offense from simultaneous possession of a gun when it enacted section 922, I see no basis for concluding that the government may treat the same conduct as two offenses simply by charging the possession of the gun under another statute which, under *Conn*, is not significantly different. *United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), and *United States v. Wiga*, 662 F.2d 1325 (9th Cir.1981), cited by the majority for the proposition that "there is no ambiguity between § 1202 and § 922 that requires the application of the rule of lenity," are simply irrelevant to this issue. These cases were concerned with whether a person convicted under one of the statutes could be sentenced to a greater term than was provided in the other. The courts concluded that the statutes were not ambiguous as to whether Congress intended one to limit the sentence that could be imposed under the other. They did not consider any possible ambiguity as to whether a person could be convicted under both for a single act of possession. *Wiga* and *Batchelder* only tell us that if the government must elect between counts 2 and 3, they are not required to elect the section 1202 charge, which carries the lesser penalty.

We need not reach the multiplicity issue in this case. The majority, nonetheless, does so and, in my view, decides it wrongly.